UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ZACHARY JOSEPH ZABAVSKI,

     Petitioner,

v.

DAVE SHAVER,

     Respondent.

_____/

Case No. 1:20-cv-1031

Honorable Ray Kent

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. The parties have consented to the conduct of all proceedings in this case, including entry of a final judgment and all post-judgment motions, by a United States Magistrate Judge. (ECF Nos. 9, 10.)

Petitioner Zachary Joseph Zabavski is incarcerated with the Michigan Department of Corrections at the Cooper Street Correctional Facility (JCS) in Jackson, Jackson County, Michigan. On February 21, 2017, following a two-day jury trial in the Kent County Circuit Court, Petitioner was convicted of three counts of third-degree criminal sexual conduct (CSC-III), in violation of Mich. Comp. Laws § 750.520d, and one count of fourth-degree criminal sexual conduct (CSC-IV), in violation of Mich. Comp. Laws § 750.520e. On March 30, 2017, the court sentenced Petitioner to concurrent prison terms of 7 to 15 years for each CSC-III conviction and 1 year, 4 months to 2 years for the CSC-IV conviction. On direct appeal, the Michigan Court of Appeals concluded that the trial court had erred in scoring an offense variable. Upon correction of that error, Petitioner's minimum sentence range changed. The trial court resentenced Petitioner on

June 6, 2019. By that date, Petitioner had already served his CSC-IV sentence, but the trial court amended Petitioner's CSC-III sentences to 5 to 15 years.

On November 27, 2020, Petitioner, with the assistance of counsel, filed his habeas corpus petition raising eight grounds for relief, as follows:

I.     Trial counsel was constitutionally ineffective contrary to the 6th Amendment in failing to investigate and present an expert on the effects of alcohol on human perception and memory.

II.    Counsel was constitutionally ineffective contrary to Petitioner's 6th Amendment right where trial counsel failed to investigate and present witnesses and/or other evidence regarding his obvious marks and other identifying features that would have been seen if he were naked when witnesses appeared in the room.

III.   Trial counsel was constitutionally ineffective contrary to Petitioner's 6th Amendment right where trial counsel failed to object to infirm jury instructions and/or failed to request a jury instruction for Mr. Zabavski.

IV.    Trial counsel was constitutionally ineffective contrary to Petitioner's 6th Amendment right where trial counsel failed to call Petitioner as a witness in his own defense.

V.     Trial counsel was constitutionally ineffective contrary to Petitioner's 6th Amendment right where trial counsel failed to adequately advi[s]e Petitioner of plea offers before trial.

VI.    The combined effects of the instances of trial counsel's ineffective assistance, contrary to Petitioner's 6th Amendment right, warrant a reversal.

VII.   Petitioner's convictions must be reversed where there was insufficient evidence to convict, a violation of his federal constitutional right to Due Process.

VIII.  Petitioner's constitutional rights were violated where the Michigan Appellate Courts misapplied the harmless error rule applicable to the erroneous admission of evidence at trial where the evidence was obtained in violation of his 4th Amendment rights. Petitioner was denied a fair trial guaranteed under Due Process by the erroneous admission of this evidence.

(Pet., ECF No. 1, PageID.5–10, 16–21.) Respondent asserts that Petitioner's eighth ground for relief is not cognizable on federal habeas review and that all of Petitioner's claims are meritless. (ECF No. 6.) For the following reasons, the Court concludes that Petitioner has failed to set forth

2

a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.    Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's prosecution as follows:

> Defendant was drinking alcoholic beverages with his friend at a house where the victim was asleep in her bedroom. Earlier in the night, the victim had become severely intoxicated and her friends put her to bed. One of the victim's friends continued to check on her, noting that she had vomited in her bed. During one such check-up, the friend discovered defendant, naked, jumping out of the victim's bed. The victim's pants and underwear had been removed. The victim testified that she had been passed out when she awoke to defendant on top of her, where he kissed her mouth and penetrated her vagina digitally, orally, and with his penis. Upon discovery, defendant became immediately defensive and threatened to hurt himself. His boxers were found in the victim's bedroom next to her bed, smelled of vomit, and had the victim's DNA on them.
>
> During an interview with defendant, the police seized defendant's cellular telephone without a warrant or defendant's consent. Before trial, defendant moved the trial court to suppress the evidence the police discovered from their warrantless seizure of the device. After first granting the motion to suppress, the trial court reconsidered its opinion and denied the motion, reasoning that although the cellular telephone was seized in violation of the Fourth Amendment, the evidence still was admissible under the inevitable discovery or attenuation doctrines. Defendant was then tried and convicted as noted, *supra*.

*People v. Zabavski*, No. 338317, 2019 WL 1780777, at *1 (Mich. Ct. App. Apr. 23, 2019) (footnote omitted).

The jury heard testimony over the course of two days from the victim, the victim's twin sister, various friends of both the victim and Petitioner, a sexual assault nurse examiner, a forensic scientist, a DNA analyst, and two detectives. (Trial Tr. II & III, ECF Nos. 7-7, 7-8.) The jury deliberated for about two hours before reaching its verdict. (Trial Tr. IV, ECF No. 7-9,

3

PageID.420.) The court sentenced Petitioner as noted above on March 30, 2017. (Sentencing Tr., ECF No. 7-10.)

Petitioner subsequently filed a motion for new trial, raising several claims of ineffective assistance of counsel. *See Zabavski*, 2019 WL 1780777, at *1. The trial court held a two-day *Ginther*[1] hearing on November 13 and 15, 2017. (ECF Nos. 7-11, 7-12.) On January 3, 2018, the trial court denied Petitioner's motion. (ECF No. 7-15.)

Petitioner, with the assistance of the same counsel who has appeared to represent him in this habeas proceeding, appealed his convictions and sentence, raising the same issues he now raises in his § 2254 petition. (ECF No. 7-13, PageID.1126.) The court of appeals agreed with Petitioner that the seizure of his phone violated the Fourth Amendment and that the evidence derived from the phone should have been suppressed, but concluded that such error was harmless. *See Zabavski*, 2019 WL 1780777, at *1–4. The court of appeals rejected Petitioner's ineffective assistance of counsel claims and further concluded that sufficient evidence supported Petitioner's convictions. *See id.* at *4–10. Finally, the court of appeals agreed with Petitioner with respect to his claim that the trial court had committed a scoring error at sentencing. *Id.* at *10–11. As noted above, the court of appeals vacated Petitioner's sentence and remanded the matter to the trial court for resentencing. *Id.* at *11.

Petitioner, with the assistance of counsel, then filed an application for leave to appeal to the Michigan Supreme Court. On October 30, 2019, the Michigan Supreme Court denied Petitioner's application for leave to appeal. (ECF. No. 7-14, PageID.1301.) This § 2254 petition followed.

---

[1] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record.

4

## II.      AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

### A.    Ineffective Assistance of Counsel Claims

#### 1.    Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might

7

be considered sound trial strategy. *Id.* (citing *Michel*, 350 U.S. at 101); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010)). Because the standards under both *Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

In resolving Petitioner's claims of ineffective assistance, the Michigan Court of Appeals stated with respect to the standard of review:

> To establish ineffective assistance of counsel, a defendant must show that (1) counsel rendered assistance that "fell below an objective standard of reasonableness" under the prevailing professional norms, and (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Toma*, 462 Mich. 281, 302-303; 613 N.W.2d 694 (2000) (quotation marks and citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v. Carbin*, 463 Mich. 590, 600; 623 N.W.2d 884 (2001) (quotation marks omitted). Furthermore, "[b]ecause the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Id.*

*Zabavski*, 2019 WL 1780777, at *4. Although the appellate court cited state court authority for the standard, the standard applied is identical to *Strickland*. Moreover, if one looks to *Toma*, the source of the standard is identified as *Strickland*. *See Toma*, 613 N.W.2d at 703. Thus, there is no question that the court of appeals applied the correct standard. The Court, therefore, will consider whether the court of appeals reasonably applied the standard for each of Petitioner's claims of ineffective assistance of counsel.

### 2.    Ground I—Failure to Present an Expert Witness

In his first ground for relief, Petitioner faults trial counsel for failing to "investigate and present an expert on the effects of alcohol on human perception and memory." (ECF No. 1, PageID.5.) Petitioner avers that had expert testimony been provided on this issue, counsel could have challenged the other witnesses, including the victim, as "not reliable or credible." (*Id.*)

In rejecting this claim, the court of appeals stated:

Defendant argues that trial counsel was deficient in failing to call an expert to discuss memory. "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v. Russell*, 297 Mich. App. 707, 716; 825 N.W.2d 623 (2012). "[T]his Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v. Benton*, 294 Mich. App. 191, 203; 817 N.W.2d 599 (2011). A defense counsel's failure to present a witness may constitute ineffective assistance only where it "deprives the defendant of a substantial defense." *Russell*, 297 Mich. App. at 716 (quotation marks omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v. Chapo*, 283 Mich. App. 360, 371; 770 N.W.2d 68 (2009) (quotation marks omitted).

In this case, trial counsel did consider calling an expert toxicologist, but she changed her mind after the defense theory was that defendant did not have sexual contact with the victim. This did not fall below an objective standard of reasonableness. At the *Ginther* hearing, an expert testified about fragmented memory, but that testimony did not amount to a substantial defense. The testimony concerned common, everyday knowledge about the impact that alcohol can have on a person. The jury was aware that the victim's memory was impacted in this case because the victim testified that she began drinking early in the day and then did not remember anything until she was awakened by a man who was on top of her. The jury was therefore aware that the victim had issues with her memory. It was not deficient strategy for trial counsel to pursue a different defense. Trial

> counsel attempted to show inconsistencies in the victim's testimony, that the witnesses were unreliable, and that defendant's DNA was not on the underwear found near the victim's bed. Failure to call a toxicologist did not deny defendant a substantial defense and trial counsel was not ineffective in this respect. See *id.*

*Zabavski*, 2019 WL 1780777, at *4–5.

"Decisions as to whether to call certain witnesses or what evidence to present are presumed to be matters of trial strategy, and the failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense." *Collins v. Berghuis*, No. 1:08-cv-369, 2011 WL 4346333, at *16 (W.D. Mich. Aug. 22, 2011) (citing *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)). Here, Petitioner simply has not demonstrated that counsel's failure to present an expert witness regarding the effects of alcohol on human perception and memory deprived him of a "substantial defense." *Id.* At trial, the victim testified that she started "drinking probably early afternoon," and that she "honestly [did not] remember much after that until obviously what happened." (Trial Tr. II, ECF No. 7-7, PageID.338.)

On cross-examination, counsel was able to have the victim confirm that she had started drinking around 1:00 p.m. or 2:00 p.m. (*Id.*, PageID.341.) Trial counsel also pointed out inconsistencies regarding the victim's recollection of events. (*Id.*, PageID.341–343.) Trial counsel cross-examined the witnesses who had been at the party to show that they had been drinking quite a bit and, therefore, their testimony was unreliable as well. (*See generally* Trial Tr. II & III, ECF Nos. 7-7, 7-8) From this testimony, the jury was already aware that memories could be impacted because of the consumption of alcohol that day, and any expert testimony regarding the effect of alcohol on memory and perception would not have added anything substantial to Petitioner's defense. Petitioner has failed to show that the court of appeals' rejection of his ineffective

10

assistance claim premised upon counsel's failure to present an expert witness is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief on ground I.

### 3. Ground II—Failure to Present Witnesses Regarding Petitioner's Identifying Features

In ground II, Petitioner contends that counsel was ineffective for failing to investigate and present witnesses and evidence regarding Petitioner's "obvious marks and other identifying features that would have been seen if he were naked when witnesses appeared in the room." (ECF No. 1, PageID.7.) Petitioner argues that counsel knew that if witnesses had seen Petitioner naked from the side or rear, they would have certainly noticed identifying marks. (*Id.*) He notes that at the *Ginther* hearing, witnesses on his behalf testified that he "had a large and obvious tattoo on the left side of his body and a hole in his buttocks on the night in question." (*Id.*)

In rejecting this claim, the court of appeals stated:

Defendant argues that trial counsel was deficient in failing to present evidence that he had a cut on his buttocks and a large tattoo on his torso. This argument lacks merit.

At the *Ginther* hearing, trial counsel testified that she was aware of the bodily markings, but she decided not to present photographic evidence because she did not want to call defendant's mother as a witness to lay a foundation. Instead, trial counsel asked White whether she saw any tattoos or injuries on defendant, and asked Nuiver whether he saw a tattoo or an injury on defendant's body. Therefore, it was apparent that trial counsel investigated and considered the markings, but she decided not to pursue an identification defense by introducing photographs. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v. Rockey*, 237 Mich. App. 74, 76; 601 N.W.2d 887 (1999). Trial counsel's strategic decision was not deficient considering that three witnesses testified that they saw defendant naked in the victim's bedroom. Moreover, "[t]his Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id.* at 76-77.

*Zabavski*, 2019 WL 1780777, at *5.

As noted above, "[d]ecisions as to whether to call certain witnesses or what evidence to present are presumed to be matters of trial strategy, and the failure to call witnesses or present

11

evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense." *Collins*, 2011 WL 4346333, at *16 (citing *Chegwidden*, 92 F. App'x at 311 and *Hutchison*, 303 F.3d at 749). The record reflects that counsel questioned the witnesses who saw Petitioner naked about whether they had seen any identifying marks or tattoos. (Trial Tr. II, ECF No. 7-7, PageID.353, 361, 365.) Two of the witnesses, however, said that they only saw Petitioner from the front. (*Id.*, PageID.353, 361.)

Petitioner faults trial counsel for failing to call his mother or his grandmother to testify regarding his identifying tattoo and marks. During the *Ginther* hearing, trial counsel testified that Petitioner's mother had provided photographs of Petitioner's identifying tattoo and the hole on his buttocks, but that she did not introduce the photographs because "as time went throughout the trial, I wasn't going to call the mother." (Mot. Hr'g Tr. I, ECF No. 7-11, PageID.339–440.) The trial court itself noted that during trial, Petitioner's mother had to be removed because she was mouthing words and shaking her head during the victim's testimony. (*Id.*, PageID.455–456.) Ms. Van Ek did testify at the *Ginther* hearing that she was aware of Petitioner's tattoo and identifying mark and was "willing to help out [Petitioner] in any way possible." (Mot. Hr'g Tr. II, ECF No. 7-12, PageID.468.)

To prevail, Petitioner must demonstrate that counsel's strategy deprived him of a substantial defense. The record does not support that claim. As the court of appeals noted, numerous witnesses testified that they saw Petitioner in the victim's room, naked, and that one witness saw him jumping out of the victim's bed. Moreover, Petitioner's boxers were found in the victim's bedroom, next to her bed, and had her DNA on them. *See Zabavski*, 2019 WL 1780777, at *1. This Court agrees with the court of appeals that given the number of witnesses who saw Petitioner in the victim's bedroom, counsel's decision to not focus on an identification defense

regarding Petitioner's tattoo and identifying mark was not deficient. Petitioner has failed to show that the court of appeals' rejection of his ineffective assistance claim premised upon counsel's failure to pursue this defense is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief on ground II.

### 4.      Ground III—Failure to Challenge and Request Jury Instructions

Next, Petitioner contends that counsel should have requested a jury instruction "that the mere fact that the complaining witness was intoxicated during the sexual episode could not satisfy the 'force or coercion' element of Criminal Sexual Conduct in Michigan." (ECF No. 1, PageID.8.) Petitioner also alleges that counsel should have objected "to the trial court's definition of 'physically helpless' as read to the jury before and after proofs." (*Id.*)

In rejecting Petitioner's argument, the court of appeals noted:

Next, defendant argues that trial counsel was ineffective for failing to object to the trial court's instruction on "physically helpless." This argument lacks merit.

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v. Dobek*, 274 Mich. App. 58, 82; 732 N.W.2d 546 (2007). "The trial court's role is to clearly present the case to the jury and to instruct it on the applicable law." *Id.* "Jury instructions must include all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence." *Id.* "Jury instructions are reviewed in their entirety, and there is no error requiring reversal if the instructions sufficiently protected the rights of the defendant and fairly presented the triable issues to the jury." *Id.*

Defendant was convicted of CSC-III pursuant to MCL 750.520d(1)(c), which provides as follows:

(1) A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist:

* * *

(c) The actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless.

The statue defines "physically helpless" as follows:

> "Physically helpless" means that a person is unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act." [MCL 750.520a(m).]

In this case, in defining "physically helpless," the trial court relied on M Crim JI 20.11, which provides, in relevant part:

> (5) Physically helpless means that [*name complainant*] was unconscious, asleep, or physically unable to communicate that [he/she] did not want to take part in the alleged act.

The trial court's instruction mirrored the language in the relevant statute. The instruction "sufficiently protected the rights of the defendant and fairly presented the triable issues to the jury." *Dobek*, 274 Mich. App. at 82. Accordingly, the trial court properly instructed the jury regarding the law in this case, and trial counsel was not ineffective in failing to raise an objection. See *People v. Ericksen*, 288 Mich. App. 192, 201; 793 N.W.2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

*Zabavski*, 2019 WL 1780777, at *5–6.

Petitioner first contends that counsel should have requested an additional jury instruction indicating that intoxication alone does not render a person physically helpless for purposes of the "force or coercion" element of CSC. At the *Ginther* hearing, however, trial counsel explained that she was "under the understanding that everybody agreed that the girl was passed out drunk on the bed. Everybody agreed to that particular fact, so I didn't see a reason to say—to object to whether or not she was physically helpless." (Mot. Hr'g Tr. I, ECF No. 7-11, PageID.438.) Counsel testified that Petitioner himself "said that as well." (*Id.*) Counsel also testified that the defense theory was that Petitioner had not touched the victim. (*Id.*, PageID.436.) Petitioner has not demonstrated that counsel's decision was not sound trial strategy and that her decision to not request an additional jury instruction was deficient or prejudiced his defense in any way.

Petitioner also faults counsel for not objecting to the trial court's definition of "physically helpless." Petitioner states:

> A person must be sufficiently "asleep" or "unconscious" as to be physically unable to communicate an unwillingness to act. Instead, the trial court read the language " . . . physically unable to communicate . . ." as a separate way to prove a person was physically helpless and not in any way a necessary requirement for a finding that the person was "asleep" or "unconscious."

(ECF No. 3, PageID.74–75.) Essentially, Petitioner asserts that a victim must be either asleep or unconscious, and physically unable to communicate unwillingness.

Petitioner's reading of the statute is unsupported. In Michigan, a person is physically helpless if "unconscious, asleep, **or** for any other reason is physically unable to communicate unwillingness to an act." Mich. Comp. Laws § 750.520a(m) (emphasis added). The statute does not require a victim to be both asleep or unconscious **and** unable to communicate willingness. The trial court's jury instruction regarding the definition of "physically helpless" mirrored the language of the statute. Counsel's failure to make a frivolous objection does not constitute ineffective assistance of counsel. *See Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2018) ("No prejudice flows from the failure to raise a meritless claim.").

Petitioner has failed to show that the court of appeals' rejection of his ineffective assistance claim premised upon counsel's failure to request an additional jury instruction and to object to the jury instruction defining "physically helpless" is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief on habeas ground III.

### 5.    Ground IV—Failure to Call Petitioner as a Witness

Petitioner next asserts that trial counsel was ineffective for failing to call him as a witness for his own defense. (ECF No. 1, PageID.10.) Petitioner asserts that counsel told him not to testify and did nothing to prepare him to testify. (*Id.*) Petitioner also asserts that counsel never told him that he had a right to testify. (*Id.*)

In rejecting Petitioner's claim, the court of appeals stated:

A criminal defendant has a constitutional right to testify in his own defense at trial. *People v. Bonilla-Machado*, 489 Mich. 412, 419; 803 N.W.2d 217 (2011). "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *Id.* "On the other hand, if defendant . . . decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *People v. Simmons*, 140 Mich. App. 681, 685; 364 N.W.2d 783 (1985) (quotation marks omitted). Counsel's advice not to testify is presumed to be a matter of trial strategy. *People v. Tommolino*, 187 Mich. App. 14, 17; 466 N.W.2d 315 (1991).

In this case, the evidence showed that defendant acquiesced to trial counsel's advice that he not testify at trial. Trial counsel testified that defendant did not indicate a desire to testify and defendant did not inform the trial court that he desired to testify. Although testimony showed that trial counsel used colorful language in advising defendant about taking the stand, trial counsel sufficiently advised defendant that he could testify if he wanted. There is no evidence that defendant expressed his desire to testify after being advised by counsel. Therefore, the record supports the trial court's finding that defendant waived his right to testify, and defendant has not shown that trial counsel was ineffective in this respect[.]

*Zabavski*, 2019 WL 1780777, at *6.

In a criminal trial, the protections afforded under the Constitution for "due process of law" provide that "no one shall be condemned in his person . . . without an opportunity of being heard in his own defense." *Holden v. Hardy*, 169 U.S. 366, 390-91 (1898). A criminal defendant's right to testify on his own behalf "is a fundamental right." *United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007) (citing *Rock v. Arkansas*, 483 U.S. 44, 52–53 & n.10 (1987)). The right can be waived by a defendant only if done so knowingly and intelligently. *Id.* (citation omitted); *see Schneckloth v. Bustamonte*, 412 U.S. 218, 237 (1973) ("Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial."). The Supreme Court has determined that some waivers of fundamental rights are required to be taken on the record. However, while it remains advisable, "the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intelligently waived the right to testify, nor ensure that the defendant has waived the right on the record." *United States v. Webber*,

208 F.3d 545, 551 (6th Cir. 2000) (citing *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)). To retain the right, "a defendant must 'alert the trial court' that he desires to testify" or that a disagreement with defense counsel exists. *Id.* (quoting *Pelzer v. United States*, No. 96-1195, 1997 WL 12125, at *2 (6th Cir. Jan. 13, 1997)).

Petitioner asserts that the state courts ignored testimony presented at the *Ginther* hearing that "trial counsel essentially told [Petitioner] not to testify and that she did nothing to even prepare him to testify so that he could make an informed choice." (ECF No. 3, PageID.77.) He argues further that his mother and grandmother testified that Petitioner wanted to testify at trial, and that "[t]rial counsel used such strong language in telling him not to testify that no one in [Petitioner's] position would have felt that he still had the right to do so." (*Id.*)

During the *Ginther* hearing, counsel testified that she did not talk to Petitioner about what he might be asked because he "did not indicate to [her] his willingness to testify." (Mot. Hr'g Tr. I, ECF No. 7-11, PageID.441.) She indicated that she would have prepped Petitioner for trial had she known that he wanted to testify. (*Id.*) Counsel testified that, generally, she advises her clients not to testify and when she does so, that she "advise[s] them what [her] opinion is," but that they must make the decision. (*Id.*, PageID.442.) She did not recall the "specific phrasing" she used when advising Petitioner not to testify. (*Id.*) On cross-examination, however, counsel noted that she was aware of how Petitioner would "stand up to questioning" because she observed his interview with law enforcement. (*Id.*, PageID.443.)

Petitioner's mother testified that counsel "seem[ed] confident in her opinion" that Petitioner should not testify, telling him that "unless he said, f*** you, [counsel], I'm going [to] testify, she would not allow him to testify for himself—her exact words." (*Id.*, PageID.453.) She averred that there "was no prepping for testimony." (*Id.*) On cross-examination, Petitioner's

mother stated that Petitioner told counsel that he wanted to testify. (*Id.*, PageID.454.) She also testified that "of course" she, as his mother, wanted him to testify at trial. (*Id.*)

Petitioner's grandmother testified that she was present during a meeting with trial counsel about whether Petitioner should testify, and that trial counsel "laughed and smiled and kind of, she says, you'd have to tell me, [Petitioner], to f*** off, and she said it in a joking way." (Mot. Hr'g Tr. II, ECF No. 7-12, PageID.469.) She testified that counsel did not prepare Petitioner to testify in any way. (*Id.*) Contrary to Petitioner's assertion (ECF No. 3, PageID.77), his grandmother at no time explicitly stated that Petitioner wanted to testify at trial.

The court of appeals' determination turned principally on the resolution of factual issues, not legal issues. As noted *supra*, a determination of a factual issue made a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner*, 449 U.S. at 546–547 (1981); *Smith*, 888 F.2d at 407 n.4. Petitioner does not offer any new evidence to rebut the state courts' findings. Rather, Petitioner asks this Court to look at the same evidence relied upon by the state courts and essentially credit the testimony given by his mother and grandmother over that given by counsel. That is not the nature of federal habeas review.

Although Petitioner's mother did testify that Petitioner asserted his desire to testify on his own behalf at trial, nothing in the record supports a conclusion that Petitioner made that desire known **after** counsel advised him not to testify and told him that, ultimately, it was his own decision. At trial, counsel indicated that the defense would rest without presenting any testimony. (Trial Tr. III, ECF No. 7-8, PageID.404.) Petitioner did not speak out or make any indication that he wished to testify. Furthermore, the record is notably devoid of any offer of proof outlining

Petitioner's purported testimony. Thus, there is nothing in the record to support a claim that Petitioner's failure to testify resulted in any prejudice to him.

Petitioner has failed to show that the court of appeals' rejection of his ineffective assistance claim premised upon counsel's failure to call him to the stand to testify on his own behalf is contrary to, or an unreasonable application of, *Strickland*. The Court, therefore, will dismiss habeas ground IV.

### 6.    Ground V—Failure to Adequately Advise Petitioner of Plea Offers

In ground V, Petitioner contends that counsel failed to "adequately advi[s]e [him] of plea offers before trial." (ECF No. 1, PageID.16.) According to Petitioner's mother, counsel "did not explain sentencing guidelines before trial." (*Id.*) Moreover, counsel did not explain the possibility of Petitioner receiving a Holmes Youthful Trainee Act (HYTA)[2] disposition. (*Id.*) Petitioner alleges further that he "was certainly offered a term of one (1) year in jail and was never told how high his guidelines would be if he lost at trial during pretrial negotiations." (*Id.*) He asserts that "[b]efore trial, he could have pled guilty and petitioned for HYTA or he could have pled no contest." (*Id.*) Petitioner avers that the "vast difference" in the sentence he received compared to a one-year jail term "is sufficient to establish prejudice." (*Id.*)

In rejecting this claim, the court of appeals stated:

> Next, defendant argues that trial counsel was ineffective before trial because she did not explain the sentencing guidelines or the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.*, such that defendant was not given the opportunity to accept a plea offer. Defendant argues that trial counsel was ineffective because she did not properly advise him about the plea offer and did not properly articulate

---

[2] "HYTA permits Michigan courts to assign a 17-to-24-year-old the status of a 'youthful trainee' if he pleads guilty to a criminal offense." *United States v. Thompkins*, No. 21-2904, 2022 WL 3151810, at *1 (6th Cir. Aug. 8, 2022) (citing Mich. Comp. Laws § 762.11(1)). If the trainee successfully completes a term of probation or custody, his case may be dismissed without a judgment of conviction. *See* Mich. Comp. Laws §§ 762.13, 762.14. Notably, however, many CSC offenses are excluded from HYTA eligibility. *See id.* § 762.11(3)(e).

the potential prison sentence that defendant could face if he went to trial and lost. This argument lacks merit.

"The decision to plead guilty is the defendant's, to be made after consultation with counsel and after counsel has explained the matter to the extent reasonably necessary to permit the client to make an informed decision." *People v. Corteway*, 212 Mich. App. 442, 446; 538 N.W.2d 60 (1995). Trial counsel is not required to recommend whether to accept a plea offer; instead, "[t]he test is whether the attorney's assistance enabled the defendant to make an informed and voluntary choice between trial and a guilty plea." *Id.*

In this case, at the *Ginther* hearing, trial counsel agreed that the prosecution offered a plea agreement to allow defendant to plead guilty to one count of CSC-III with a 12-month "cap." She could not recall if there was a potential for a no-contest plea, but she did agree that the prosecution sometimes offers that type of plea in a CSC case. Trial counsel did not recall the prosecution offering a plea under the HYTA. She did recall explaining what the HYTA was to defendant and his mother. Trial counsel testified that she discussed potential sentencing if defendant went to trial and lost. She informed defendant that his sentencing range would be 51 to 85 months. Trial counsel did not recall the prosecution offering a plea agreement to plead guilty exclusively to CSC-IV. Trial counsel testified that she did not recall specifically what she told defendant and his mother about the offer with the 12-month cap. She stated that she "would have liked that [plea offer] simply because then the defendant can control the outcome. And I would have conveyed that to defendant." Trial counsel stated she "absolutely [did] not" tell defendant that his case was "a slam dunk because there was no DNA." Rather, she informed defendant that "it was a triable case," but, "[n]ever in my life used the word slam dunk."

Trial counsel's testimony supported the trial court's finding that defendant was not denied the effective assistance of counsel during the plea negotiation phase of the proceeding. Trial counsel's testimony showed that she informed defendant of his potential exposure to a prison sentence if he were to reject the plea agreement and lose at trial. She explained that he could face 51 to 85 months in prison, which ultimately was within the 7-year (84-month) minimum sentence that defendant received in this case. Trial counsel also testified that she liked the plea offer and would have conveyed that to defendant. The record supported that trial counsel advised defendant that the plea offer was favorable and that he faced a prison sentence if he rejected the plea and proceeded to lose at trial. Trial counsel's advice was adequate to allow defendant to "make an informed and voluntary choice between trial and a guilty plea." *Id.* Trial counsel did not render deficient performance with respect to the plea negotiation.

*Zabavski*, 2019 WL 1780777, at *8–9.

A criminal defendant is entitled to effective assistance of counsel during plea negotiations. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The same two-part *Strickland* inquiry applies to ineffective assistance of counsel claims regarding the plea negotiation process. *See id.* Often, habeas petitioners challenge the assistance of counsel for advising acceptance of a plea offer. Then, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court described the appropriate prejudice analysis where counsel advises rejection of a plea offer:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164. Moreover, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *See Missouri v. Frye*, 566 U.S. 134, 147–49 (2012).

Petitioner has failed to demonstrate the prejudice necessary to establish ineffective assistance of counsel with respect to the plea process. During the *Ginther* hearing, counsel testified that the prosecution had offered to have Petitioner "plead guilty to one count of CSC third with a twelve-month cap." (Mot. Hr'g Tr. I, ECF No. 7-11, PageID.433.) Counsel conveyed that offer to Petitioner. (*Id.*) Counsel remembered discussing the HYTA with Petitioner but did not remember "it ever being offered to him." (*Id.*, PageID.434.) Counsel also testified that she met with Petitioner and discussed his possible sentencing guidelines exposure with him if he went to trial. (*Id.*) Counsel stated that she liked the offer with the 12-month cap and that she would have conveyed

that to Petitioner. (*Id.*, PageID.435.) Moreover, counsel did not recall the prosecution offering a plea to just CSC-IV. (*Id.*)

Furthermore, during the *Ginther* hearing, Petitioner's mother testified that counsel did not actually tell Petitioner "not to take the plea." (*Id.*, PageID.451.) She admitted that counsel had discussed the HYTA and the relevant sentencing guidelines but believed that counsel's explanations were not sufficient. (*Id.*, PageID.450–451.) Notably, as Respondent points out, Petitioner has provided no evidence to support a finding that he would have accepted any plea offer. Petitioner himself did not testify during the *Ginther* hearing. Petitioner's mother suggested that Petitioner would not have taken the plea by stating that he "didn't do it, so why would he just take the plea?" (*Id.*, PageID.454.) Petitioner's argument is based on nothing more than speculation and assumptions that he would have taken the plea offer had counsel more adequately advised him of the offer and the risks associated with trial.

Petitioner has failed to show that the court of appeals' rejection of his ineffective assistance claim premised upon counsel's failure to adequately advise him during the plea offer process is contrary to, or an unreasonable application of, *Strickland*. The Court, therefore, will dismiss habeas ground V.

###     7.     Ground VI—Cumulative Effect of Counsel's Errors

Finally, Petitioner contends that the "combined effects of the instances of trial counsel's ineffective assistance, contrary to Petitioner's 6th Amendment right, warrant a reversal." (ECF No. 1, PageID.17.) The court of appeals rejected this claim, noting that there was no cumulative effect because "trial counsel's performance was not deficient in any of the aspects of the case that defendant cites on appeal." *See Zabavski*, 2019 WL 1780777, at *9.

The Court must consider the cumulative effect of such errors because "[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may

cumulatively produce a trial setting that is fundamentally unfair." *United States v. Hughes*, 505 F.3d 578, 597 (6th Cir. 2007) (quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983)). "Thus, examining an ineffective assistance claim requires the court to consider 'the combined effect of all acts of counsel found to be constitutionally deficient, in light of the totality of the evidence in the case.'" *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) (quoting *Lundgren v. Mitchell*, 440 F.3d 754, 770 (6th Cir. 2006)). However, as discussed *supra*, the Court has concluded that Petitioner has failed to demonstrate that counsel was constitutionally deficient in any way. Thus, because Petitioner's individual claims of ineffective assistance lack merit, he cannot show that any alleged cumulative error violated his constitutional rights. *See Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Habeas ground VI will, therefore, be dismissed.

**B.     Ground VII—Sufficiency of the Evidence**

Petitioner next contends that the prosecution presented insufficient evidence to support his convictions. (ECF No. 1, PageID.19.)

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most

favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In resolving Petitioner's sufficiency challenge, the Michigan Court of Appeals stated with respect to the standard of review:

> When analyzing a claim of insufficient evidence, this Court views the evidence in the light most favorable to the prosecution to determine "whether any rational trier of fact could have found that the essential elements of the crime charged were proven beyond a reasonable doubt." *People v. Lundy*, 467 Mich. 254, 257; 650 N.W.2d 332 (2002). "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v. McKinney*, 258 Mich. App. 157, 165; 670 N.W.2d 254 (2003) (quotation marks omitted; alteration in original). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v. Hardiman*, 466 Mich. 417, 428; 646 N.W.2d 158 (2002).

*Zabavski*, 2019 WL 1780777, at \*9. Although the appellate court cited state court authority for the standard, the standard applied is identical to *Jackson*. Moreover, if one looks to *Lundy* and the cases cited therein in support of the standard, eventually the source of the standard is identified as *Jackson. See People v. Wolfe*, 489 N.W.2d 748, 751 (Mich. 1992). Thus, there is no question that the court of appeals applied the correct standard.

After stating the appropriate standard, the court of appeals followed it. The court of appeals identified the elements of CSC-III and CSC-IV, focusing on the elements of the acts of sexual

penetration and sexual contact, as well as the physically helpless state of the victim. *See Zabavski*, 2019 WL 1780777, at *9. The court then reviewed the record evidence in a light most favorable to the prosecution, stating:

> In this case, viewed in a light most favorable to the prosecution, there was sufficient evidence to allow a rational jury to conclude beyond a reasonable doubt that the victim was "physically helpless," and that defendant knew or had reason to know that the victim was "physically helpless." At trial, the victim testified that she began drinking alcohol in the midmorning hours on October 31, 2015. She consumed a large amount of alcohol, and her friends assisted in putting her to bed in the evening. The evidence showed that the victim was severely intoxicated. Hall testified that he checked on the victim on multiple occasions throughout the night, and he was concerned that the victim would choke on vomit. The victim vomited multiple times while she was sleeping. When several of the individuals left the residence, Powers and defendant were at the home. Powers testified that he and defendant looked in on the victim to ensure her well-being. This supported that defendant knew that the victim was in a compromised, physically-helpless state. When Hall returned to the home, the victim could not get out of bed to shower. The victim testified that she did not remember anything until she was awakened to a man having sexual contact with her. This evidence would have allowed a rational trier of fact to conclude beyond a reasonable doubt that the victim was "unconscious, asleep, or for any other reason [was] physically unable to communicate an unwillingness to an act," at the time of the assault and that defendant knew or had reason to know of the victim's physically helpless state. MCL 750.520a(m).
>
> In addition, there was sufficient evidence to allow a rational jury to conclude beyond a reasonable doubt that defendant sexually penetrated and made sexual contact with the victim at the time he knew or had reason to know of the victim's physically-helpless state. The victim testified that she awoke to a man who was on top of her; the man penetrated her vagina with his penis and fingers, and he performed cunnilingus on the victim. See MCL 750.520h. The victim testified that the man tried to kiss her. A nurse testified that the victim had an abrasion on her labia, which was consistent with sexual assault. This was sufficient evidence to allow a rational jury to conclude beyond a reasonable doubt that sexual contact and sexual penetration took place.
>
> In addition, there was sufficient evidence to allow a rational jury to conclude beyond a reasonable doubt that defendant was the man who committed the sexual contact and the sexual penetration. Hall testified that he entered the victim's bedroom and defendant "jumped" up and was naked. Hall, White, and Nuiver then entered the bedroom and again found defendant in the bedroom. All three witnesses testified that defendant was naked. The witnesses testified that defendant left his underwear in the room. This evidence allowed a rational trier of fact to conclude beyond a reasonable doubt that defendant was the man that sexually penetrated, and

made sexual contact with the physically-helpless victim. Accordingly, there was sufficient evidence to support defendant's convictions.

*Id.* at *10.

Petitioner contends that there was insufficient evidence to convict him because the victim "admitted that she voluntarily drank too much alcohol" and that she "further admitted to being awake when the penetration(s) occurred and even did something to communicate her unwillingness to the sexual act." (ECF No. 3, PageID.81.) Petitioner argues that "[t]he law does not criminalize penetration with a drunk person who can communicate an unwillingness to an act." (*Id.*)

The Supreme Court has separated sufficient from insufficient evidence by assessing whether the finding could be based on reasoned inference or only speculation. *Coleman v. Johnson*, 566 U.S. 650, 655 (2012). And, importantly, the *Coleman* Court provided some guidance with respect to the distinction. Based on the Court's analysis, a reasonable inference is an inference that a rational factfinder could make from the facts. That is hardly an earth-shattering revelation and it is not a particularly onerous burden. The Court went so far as to say, "the only question under *Jackson* is whether [a] finding is so insupportable as to fall below the threshold of bare rationality." *Id*. at 656.

To succeed in his challenge, Petitioner cannot simply reject the identified inferences, complain that there are other equally compelling—or even more compelling—inferences, or declare the identified inferences to be speculation. He must show that the identified inferences are irrational. That is a heavy burden; that is undoubtedly why the Sixth Circuit describes the *Jackson* standard as "a nearly insurmountable hurdle." *Davis*, 658 F.3d at 534 (quoting *Oros*, 578 F.3d at 710).

26

Petitioner here has ignored the testimony given by the victim at trial. During trial, the victim testified that after she started drinking, the next thing she remembered was "waking up." (ECF No. 7-7, PageID.338.) When she woke up, Defendant was on top of her, licking her genitals and then trying to kiss her. (*Id.*, PageID.338–339.) He then tried to push his penis inside the victim's vagina, at which point she "pushed him off." (*Id.*, PageID.339.) The victim clarified that when she first woke up, Petitioner's fingers were inside of her as well. (*Id.*) The victim also testified that she was too drunk to leave the house and so her friends put her to bed. (*Id.*, PageID.341.) She did not remember being put to bed. (*Id.*) She testified that she did not wake up "until [Petitioner] was there." (*Id.*) Furthermore, testimony at trial established that numerous individuals checked on the victim throughout the night and that the victim was unable to shower after vomiting all over herself. (*Id.*, PageID.355.) Given this testimony, the jury reasonably inferred that the victim was physically helpless and was unable to communicate her unwillingness to the sexual act.

Petitioner has not met the burden set forth above by relying on his own interpretation of testimony presented at trial. Petitioner simply has not shown that the court of appeals' detailed analysis of the evidence and the inferences drawn from that evidence, particularly regarding the victim's physically helpless state, are irrational. This Court is only required to look at the evidence in a light that favors the prosecution and assess whether a rational factfinder could conclude that Petitioner is guilty beyond a reasonable doubt in light of that evidence. It is up to the jury to decide issues of credibility, to decide between conflicting accounts, and draw inferences—so long as the inferences are rational. Petitioner's invitation to focus on inferences that favor him—inferences that are not even supported by the record evidence—is unpersuasive.

27

Furthermore, as discussed *supra* in Part III.A.4, any suggestion by Petitioner that the victim must be either asleep or unconscious **and** physically unable to communicate unwillingness is misplaced. In Michigan, a person is physically helpless if "unconscious, asleep, **or** for any other reason is physically unable to communicate unwillingness to an act." Mich. Comp. Laws § 750.520a(m) (emphasis added). The statute does not require a victim to be both asleep or unconscious **and** unable to communicate willingness. Thus, even if Petitioner's victim was not fully asleep or unconscious at the time, the testimony set forth above permitted the jury to reasonably infer that the victim was otherwise unable to communicate unwillingness.

Petitioner has failed to demonstrate that the court of appeals' determination that there was sufficient evidence to support the verdict is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to relief on habeas ground VII.

### C.      Ground VIII—Fourth Amendment Claims

As his last ground for relief, Petitioner contends that the Michigan Court of Appeals "misapplied the harmless error rule applicable to the erroneous admission of evidence at trial where the evidence was obtained in violation of his 4th Amendment rules." (ECF No. 1, PageID.21.) He avers that he was "denied a fair trial guaranteed under Due Process by the erroneous admission of this evidence." (*Id.*)

Respondent argues that Petitioner's Fourth amendment claim is not cognizable on federal habeas review. (ECF No. 6, PageID.244.) This Court agrees. In *Stone v. Powell*, the Supreme Court held that federal habeas view is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *See Stone v. Powell*, 428 U.S. 465, 494 (1976); *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012). For the rule set forth in *Stone* to apply, the state must have provided, in the abstract, a mechanism

by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

In the instant case, Petitioner cannot satisfy either prong of the *Stone* standard. It is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of *Stone*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (discussing that habeas review was not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies even if the federal court deems the state court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert*, 763 F.2d at 824 (citing

29

*Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)). Here, Petitioner has not alleged any facts showing that the state's mechanism has broken down. Because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his Fourth Amendment claim is barred on habeas review.

Petitioner attempts to sidestep this analysis by asserting that *Stone* does not apply when a state court decides the Fourth Amendment issue on harmless error grounds, as the court of appeals did here. (ECF No. 3, PageID.84–85.) Petitioner, however, acknowledges that this argument is precluded by Sixth Circuit precedent. (*Id.*, PageID.85.) The Sixth Circuit has held that "the [*Stone*] 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013). Here, Petitioner clearly presented his Fourth Amendment claim to the state courts; accordingly, the court of appeals' use of the harmless error doctrine to resolve the issue is irrelevant. *See Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977) (concluding that *Stone* barred federal habeas review of a state court's decision to bypass the merits of a Fourth Amendment claim and conclude that any error was harmless beyond a reasonable doubt).

But even if Petitioner could ignore *Stone*, his attack on the state appellate court's harmless error analysis does not warrant habeas relief. Petitioner asserts that the court of appeals' decision conflicts with the Supreme Court's decision in *Chapman v. California*, 386 U.S. 18 (1967), regarding harmless error analysis. (ECF No. 3, PageID.87.) The court of appeals concluded that any error in the admission of the cellphone evidence was harmless because of the other "overwhelming evidence of defendant's guilt . . . ." *Zabavski*, 2019 WL 1780777, at *4. Petitioner argues that the court of appeals' conclusion "ignor[es] the possible effect of the tainted evidence."

(ECF No. 3, PageID.87.) Petitioner thus takes issue with the court of appeals' harmless error determination.

Petitioner's underlying premise—that the court of appeals' *Chapman* harmless error analysis is a decision on the merits that is entitled to deference under the AEDPA and precludes relief unless it is contrary to, or an unreasonable application of clearly established federal law—is plainly correct. *See, e.g.*, *Brown v. Davenport*, 142 S. Ct. 1510 (2022). Accordingly, the Court must defer to that adjudication under § 2254(d)(1) unless Petitioner "persuades [the Court] that no 'fairminded juris[t]' could reach the state court's conclusion under [the Supreme] Court's precedents." *Id.* at 1525. This is a standard that is intentionally difficult to meet. *See Woods*, 575 U.S. at 316.

Petitioner's further claim that the court of appeals ran afoul of clearly established federal law when it relied on other overwhelming evidence of guilt to conclude the error was harmless is plainly wrong. The Supreme Court has relied on the presence of overwhelming evidence of guilt to support a determination that an error was harmless under *Chapman*. *See, e.g.*, *United States v. Neder*, 527 U.S. 1, 16 (1999) (stating that "[i]n this situation, where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless"); *Yates v. Evatt*, 500 U.S. 391, 404–05 (1991), overruled *in other part by Estelle v. McGuire*, 502 U.S. 62, 72 n.4 (1991) (stating that "[r]ather, the issue under *Chapman* is whether the jury actually rested its verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the presumption. Since that enquiry cannot be a subjective one into the jurors' minds, a court must approach it by asking whether the force of the evidence presumably considered by the jury in accordance with

the instructions is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the presumption"); *United States v. Hasting*, 461 U.S. 499, 510–12 (1983) ("The question a reviewing court must ask is this: absent the prosecutor's allusion to the failure of the defense to proffer evidence to rebut the testimony of the victims, is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty? [The court then reviewed the record evidence.] . . . In the face of this overwhelming evidence of guilt and the inconsistency of the scanty evidence tendered by the defendants, it is little wonder that the Court of Appeals referred to 'the crimes committed' and acknowledged the 'clear evidence of guilt.'"); *Harrington v. California*, 395 U.S. 250, 253 (1969) (stating that "[t]heir evidence, supplied through their confessions, was of course cumulative. But apart from them the case against Harrington was so overwhelming that we conclude that this violation of *Bruton* was harmless beyond a reasonable doubt . . ." and specifically rejecting the view of the *Chapman* minority that the weight of the evidence is immaterial); *Milton v. Wainwright*, 407 U.S. 371, 372–73 (1972) ("Assuming, arguendo, that the challenged testimony should have been excluded, the record clearly reveals that any error in its admission was harmless beyond a reasonable doubt. [citing *Harrington* and *Chapman*] The jury, in addition to hearing the challenged testimony, was presented with overwhelming evidence of petitioner's guilt . . . ."). Petitioner's suggestion that *Chapman*, or any other clearly established federal law, required the state appellate court to do more than it did cannot be sustained.

In sum, Petitioner's Fourth Amendment challenge, including his challenge to the court of appeals' harmless error analysis, is not cognizable under federal habeas review pursuant to the rule set forth in *Stone*. Furthermore, Petitioner has failed to demonstrate that the court of appeals'

harmless error determination is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief on habeas ground VIII.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a

constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### <u>Conclusion</u>

The Court will enter a judgment denying the petition and an order denying a certificate of appealability.

Dated:    <u>December 29, 2022</u>              <u>/s/ Ray Kent</u>
                                              Ray Kent
                                              United States Magistrate Judge